### BERNHEIM v. BOEHME.

#### (Circuit Court, D. New Jersey. May 1, 1895.)

PATENTS—INVENTION—CATCHES FOR SATCHELS.
>   The Lieb patent, No. 242,944, and the Flocke patent, No. 303,716, for catches for traveling bags and satchels, *held* void for want of invention, in view of the prior state of the art, as shown by the Lagowitz spring catch and the Taylor trunk fastener.

This was a bill by Gustav Bernheim against Albert Boehme for infringement of two patents relating to catches for traveling bags and satchels.

Louis C. Raegener, for complainant.
Jonathan Marshall, for defendant.

GREEN, District Judge. The bill in this case is filed to enjoin the defendant from infringing two patents for "catches for traveling bags and satchels," one of which is numbered 242,944, and was granted to John W. Lieb, June 14, 1881. The other is numbered 303,716, and was granted to Robert Flocke, August 19, 1884. Both have been duly assigned to the complainant, who now owns them. The specification of the Lieb patent declares that the invention protected by it "relates to that class of swinging or rocking devices which are applied to the outside of bag frames, and adapted to straddle or embrace the same in order to hold them shut; and the improvement consists in a spring combined therewith, in order to hold the device in the locked and unlocked positions, as hereinafter described." And the first claim is as follows:

"(1) In a fastening for traveling bags, the rock shaft provided with the flattened faces, c' and d, and suitable locking device, in combination with the spring bearing against the side of the shaft, as shown."

The other claim is not in controversy.

The specification of the Flocke patent says:

"This invention relates to certain improvements in that class of fastenings for traveling bags, having two arms arranged at the ends of a rock shaft, adapted to hold the sections of the bag frame together·there between, said shaft having a spring bearing thereon to hold the arms into either a locked or an unlocked position. Heretofore, in the fastenings referred to, the said shaft had angular stops or projecting flanged collars formed on the shaft at each side of the spring, which limited the movement of the said shaft, allowing the same a reciprocating movement only from a locked to an unlocked position, and vice versa, and preventing a free or continuous revolution of the shaft and the arms thereon. By this construction it became necessary, to gain a uniform movement of the catches on each side of the bag, to ·have a right and left hand fastening; but this is found objectionable, in that it necessitates an increased expense in manufacture, compels those handling the goods to keep a larger stock, and is oftentimes the occasion of mistakes and consequent delays in applying the device to the bag. These objections it is the object of this invention to overcome."

And the only claim of the patent is the following:

"The improved spring catch or fastener for a bag frame, the same consisting of a box, a, having therein a spring, c, and a pivotal shaft, with ears at each end thereof, adapted to hold the sections of the bag frame together, and having three cam·projections disposed at equal distances apart around the said shaft, to engage the spring, whereby the ears may be turned to a catching relation to the said frame or to either a right or left outwardly projecting position from the frame, substantially as set forth."

It appears, then, that the devices in controversy are "fastenings for holding together the hinged frame of a traveling bag." They consist of three parts or elements: ·(a) A catch, being a shaft flattened on two sides, forming a cam, and having at either end two projecting arms; (b) a spring adapted to pass upon the cam; (c) a box containing a spring, which, pressing upon the cam, tends to hold the shaft stationary.

It is admitted that these elements of the combination are all old. It is insisted by the defendant that the combination is, as well, old, and wholly wanting in novelty. To justify such insistment, the defendant offers, first, the testimony of certain witnesses, who testify that prior to 1880 they saw and had in their possession a "bag catch," precisely like those now in litigation; that it was exhibited to several manufacturers of bags, and samples left with them in the city of Newark. There is no evidence that it was adopted by those to whom it was exhibited, nor was it ever heard of again, by any one, until the present suit was commenced. This testimony is far from satisfactory. It can hardly be believed that a "catch" which, after being patented by Flocke, seems to have gone into universal use as meeting an existing want, should have attracted to itself no attention whatever by manufacturers on the critical watch for just such devices, and was treated with absolute indifference and neglect. Apparently the "catch" exhibited by the unknown person in the city of Newark, in 1880, did not receive the dubious honor of even an experimental trial. It was contemptu-

ously rejected by practical men who knew the art well; while, on the other hand, the Flocke "catch" was accepted with avidity to the number of thousands of dozens within a given twelvemonth. Certainly the unsuccessful catch of 1880, if it existed anywhere outside the imagination of one or two witnesses, must have been, in the very nature of things, a very different device from the successful catch patented in 1884 by Flocke.

But it is further insisted that the state of the art clearly deprives these alleged inventions of Lieb and Flocke of any patentable novelty, and this presents, really, the one difficult question in the case. It is not denied that in 1868 one Jacob Lagowitz devised a fastening for traveling bags in which he combined a "spring with a catch, so arranged as to bear on the shaft, and to hold the catch in any position desired, by friction. He also partly flattened the shaft to enable the spring, by pressure thereon, the more readily to hold the catch in place." This invention was followed in 1875 by one made by Charles A. Taylor, which related to "catches" or "fastenings" for trunks; its use being to fasten, together and securely, the lid and the body of a trunk. In this device the fastening proper is secured permanently to the body of the trunk, and it consists in a "shaft having two arms at the opposite ends, having a flattened face, and a spring, which, in operation, presses against the flattened face of the shaft, that thereby the fastener may be the more securely held in the locked position." It seems impossible to differentiate the devices of Lieb and Flocke from these. It cannot be denied that the same elementary parts appear in the several mechanisms. In each are found the "rock shaft" with the "flattened surface" or "cam," the "box bearing" for the shaft, and the "spring." Nor is the operation of the elements in the combination different in any material respect, while the result achieved by the joint operation of the combined parts seems to be identical in all particulars. It is quite true that there are minor differences. The Lagowitz device is said to relate to a "new manner of preventing the ends of traveling bags from getting loose, and consists in attaching, to each of the links by which the ends of the handle are connected with the bag, two arms, which, when the bag is suspended from the handle, fit over and around the sides of the frame, holding the same together, and relieving the lock." The pressure or strain upon the handle of the bag causes the arms to fall over and around the sides of the bag, and so far the catch may be said to be "automatic," as it is described in the claim. But, if the handle be disconnected from the catching device, there is left "a rock shaft," "two arms," a "box-bearing support," and a "spring" acting upon the "flattened sides" of the shaft, which is, in effect, the Lieb and the Flocke invention. And so with the Taylor trunk fastener. The same elementary parts appear in combination, having precisely the same operative action, and producing the same result. Here, too, there are differences, but they are immaterial. Taylor provides but one flattened surface to his shaft, upon which the spring is to play. Lieb's device has two such surfaces, while Flocke's has three. But the purpose of flattening the surface of the rock shaft is to provide

a larger area of surface for the compressive action of the spring. One flat side is an improvement upon the cylindrical surface, and much better results are obtained thereby from the action of the spring upon it. It is a matter of mere mechanical calculation and skill to double or treble the flattened surfaces, to obtain double or treble the result which one flattened surface gives. It is not necessary to make any further analysis or comparison of these anticipating devices. It seems clear that they deprive the Lieb and the Flocke devices of patentable novelty. The simple fact is that at the date of these alleged inventions the "bag catch," consisting of a rock shaft, with box bearings and two arms, was old. The difficulty in its use arose from an inability to fix temporarily in a permanent position the arms. These revolving easily were in some degree unmanageable, and quite as often placed themselves between the jaws of the frame of the bag as around them; thus hindering the closing of the bag, rather than making it more certain and secure. The introduction of the spring, in connection with the catch, by Lagowitz, solved the difficulty. He was a pioneer. The rest simply improved, by the exercise of mechanical skill, what he devised. Neither in the Lieb nor in the Flocke device can be found that creative work of the inventive faculty, which it is the purpose of the law to reward and protect. As was fitly said by Mr. Justice Bradley in Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225: "The process of development in manufactures creates a constant demand for new appliances, which the skill of ordinary head workmen and engineers is generally adequate to devise, and which, indeed, are the natural and proper outgrowth of such development. Each step forward prepares the way for the next, and each is usually taken by spontaneous trial and attempts in a hundred different places. To grant to a single party a monopoly of every slight advance made, except where the exercise of invention, somewhat above ordinary mechanical or engineering skill, is distinctly shown, is unjust in principle, and injurious in its consequences." For the reasons stated the bill of complaint must be dismissed.